UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RONALD JAMES M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[2] Commissioner of Social Security, <br><br> Defendant. | Case No. 5:18-cv-01740-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Ronald James M. ("Plaintiff") filed a Complaint on August 8, 2018, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Stipulation ("Jt. Stip.") regarding the issues in dispute on May 8, 2019. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

Plaintiff filed applications for DIB and SSI on February 20, 2015, alleging disability commencing on January 12, 2010. Administrative Record ("AR") 198-206. After his applications were denied initially (AR 116-21) and on reconsideration (AR 125-30), Plaintiff requested an administrative hearing (AR 131-33). Plaintiff initially appeared without counsel for a hearing on March 27, 2017 before an Administrative Law Judge ("ALJ"), but, following a colloquy, Plaintiff advised he desired counsel and the hearing was adjourned. AR 34-46. On August 2, 2017, Plaintiff again appeared before the ALJ, with counsel, and testified. AR 47-65. Plaintiff requested that the disability onset date be amended to August 13, 2013, which the ALJ approved. AR 50.

On September 18, 2017, the ALJ found Plaintiff was not disabled (AR 16-28), finding Plaintiff had not engaged in substantial gainful employment since August 13, 2013 and suffered from the following severe impairments: disorder of the right clavicle, disorder of the lumbar, disorder of the shoulder, disorder of the wrists, carpal tunnel syndrome, and disorder of the right knee. AR 18. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work, "limited to frequent but not continuous bilateral fingering and handling and frequent but not continuous right upper extremity overhead reaching." AR 19-20. The ALJ found Plaintiff was not capable of performing his past relevant work, but considering his age, education, work experience, and RFC, could perform other jobs existing in significant numbers in the national economy, meaning Plaintiff was thus not under a "disability" as defined in the Social Security Act. AR 27. On July 23, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6.

# II.
# LEGAL STANDARDS

## A. Standard of Review

Under 42 U.S.C. § 405(g), district courts may review decisions to deny benefits. Such decisions will be upheld if they are free from legal error and supported by substantial evidence in the record. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion; it is more than a scintilla, but less than a preponderance. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). In making that determination, a reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Lastly, even if an ALJ errs, the decision will be upheld if the error is harmless (id. at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110. First, the ALJ

considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a listed impairment, before proceeding to the fourth step, the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling 96-8p. After determining the RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as the claimant "actually" performed it in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether, based on the claimant's RFC, age, education, and work experience, any jobs exist in significant numbers in either the national or regional economies that the claimant can perform. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If such jobs exist, the claimant is not disabled. If no such jobs exist and the claimant meets the duration requirement, the claimant is disabled. Id. at 1099.

The claimant generally bears the burden at each of steps one through four to either disability or that the requirements to proceed to the next step have been met, and the claimant bears the ultimate burden to show disability.

See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 4):

Issue No. 1: Did the ALJ properly consider the medical evidence; and

Issue No. 2: Did the ALJ properly consider Plaintiff's subjective symptom statements.

### A. **Objective Medical Evidence**

With respect to Issue No. 1, Plaintiff contends the ALJ failed to properly consider the opinions of treating physicians James Matiko, M.D. ("Dr. Matiko") and Raymond Leung, M.D. ("Dr. Leung") and examining physician Donald D. Kim, M.D ("Dr. Kim"). Jt. Stip. at 5-8.

1. Applicable Law

In assessing an RFC, an ALJ must consider all relevant evidence in the record, including medical records and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). In reaching conclusions based upon medical evidence, an ALJ must discuss significant and probative medical evidence and, if rejected or discounted, explain why such evidence is rejected or discounted. See id.; Brown-Hunter, 806 F.3d at 492 (holding federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding ALJ must discuss significant and probative evidence and explain why it was rejected).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. § 416.902. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r, Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

2. Analysis

 a. Dr. Matiko

Plaintiff directs the Court to a January 2011 report by Dr. Matiko, a treating physician, that states Plaintiff "was to have no use of his bilateral upper extremities" (Jt. Stip. at 5 [citing AR 526]) and argues the ALJ erred in not crediting that opinion. Id. at 6-7. The ALJ did not name Dr. Matiko in his decision, but he did recite having "read and carefully considered the submitted treatment records dated from January 2011 to June 2017," including "records prior to the alleged onset date," and cites to the portion of the record that includes Dr. Matiko's January 2011 report. AR at 21. The Commissioner

argues that Dr. Matiko's opinion was not "significant and probative evidence" as it was rendered well before the alleged onset date of August 13, 2013, and thus was not required to be discussed by the ALJ. Jt. Stip. at 9. n.3.

The Court agrees with the Commissioner. As noted, although an ALJ must consider all relevant evidence in the record in assessing an RFC, the ALJ is only required to discuss "significant and probative medical evidence" in his decision. Robbins, 466 F.3d at 883; Brown-Hunter, 806 F.3d at 492. The opinion of Dr. Matiko cited by Plaintiff was rendered more than two and a half years before the alleged onset date. Further, although Plaintiff cites Dr. Matiko's January 2011 report, by February 15, 2012, still roughly a year and a half before the alleged onset date and at a time when Plaintiff was "working at a thrift store doing light duty," Dr. Matiko had substantially revised his opinion recommending far less restrictive work limitations. See AR 480, 482 (limiting "[n]o repetitive forceful gripping or grasping with both upper extremity and no heavy lifting"). Further, the ALJ had before him, and he "carefully considered" the substantial medical evidence from within the relevant period and discussed that evidence in detail in his decision. See AR 21-26.

Dr. Matiko's January 2011 opinion refenced by Plaintiff in the Joint Stipulation, rendered more than two and a half years before the alleged onset date and superseded by a far less restrictive opinion by Dr. Matiko also rendered outside the relevant period, was neither probative nor significant to the relevant inquiry before the ALJ. The ALJ did not err in rejecting such evidence and did not err in declining to further explain why he rejected it. See, e.g., Vincent, 739 F.2d at 1395 (ALJ properly rejected opinion of doctor who had treated claimant several years before relevant period and had not examined him in several years); Gunderson v. Astrue, 371 F. App'x 807, 809 (9th Cir. 2010) (unpublished) (ALJ did not err by discounting medical opinion of doctor who conducted examination "nearly two years before the alleged onset date of

7

[claimant]'s disabilities"); Vanderslice v. Berryhill, 2017 WL 2889371, at *3 (W.D. Wash. July 6, 2017) (ALJ properly rejected opinions of doctor because they were given "some" two years before the relevant period); Linda L. v. Berryhill, 2019 WL 2413009, at *4 (C.D. Cal. June 7, 2019) (ALJ did not err in finding treatment notes and an MRI predating the onset date by more than a year were "not probative").

      b.  Dr. Leung and Dr. Kim

On November 30, 2015, Dr. Leung opined Plaintiff could return to work with the restriction that Plaintiff not use either of his hands. AR 371. However, starting on January 25, 2016 and continuing monthly thereafter, excluding June, until September 2016, Dr. Leung opined Plaintiff should remain off work due to what was variously described as chronic pain, bilateral cubital tunnel syndrome, bilateral hand derangement, and flexor tendonitis. AR 361-70. On October 24, 2016, Dr. Leung opined Plaintiff was permanently totally disabled. AR 572. On June 19, 2017, Dr. Leung opined Plaintiff could "never" lift or carry any weight, can never reach, handle, finger, feel, push or pull with either hand. AR 579, 581.

On August 13, 2013, Dr. Kim diagnosed Plaintiff with a variety of carpal tunnel and hand and finger related maladies. AR 589.  On October 12, 2014, Dr. Kim noted Plaintiff's symptoms "are alleviated with medications and use of hand braces." AR 588. As a result of an October 7, 2014 exam, Dr. Kim placed Plaintiff on a work restriction precluding him from push, pulling or lifting more than 10 pounds and from repetitive forceful squeezing and grasping. AR 358.

The ALJ accorded "little weight" to the opinions of Drs. Leung and Kim, finding the opinions of both doctors were "not consistent with the entire evidence of record," noting, among other things, routine and conservative treatment; Plaintiff's declination of medication; Plaintiff's reported lack of

complaints; and diagnostic and testing results that found "no more than moderate findings." AR 24-25.

Plaintiff argues the ALJ's assessment "is woefully inadequate and misplaced" in failing to give "appropriate weight" to the "relatively consistent" opinions of Drs. Leung and Kim (and Matiko), asserting their findings were supported by the entire medical record. Jt. Stip. at 7-8. To the extent the ALJ recited conservative treatment as a basis to discount the opinions, Plaintiff cited his "multiple surgical procedures" regarding his "persistent upper extremity issues." Id. at 6.

The Court finds the ALJ properly considered the opinions of Dr. Leung and Dr. Kim in determining Plaintiff's RFC. First, the ALJ's discounting the doctors' opinions because their findings were "not consistent with the entire evidence of record" is supported by the record. AR 24-25. An ALJ is permitted to reject a treating physician's opinion that is unsupported by the record as a whole. See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Shavin v. Comm'r of Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012). The ALJ, citing to various portions of the record, found Plaintiff's diagnostic tests and physical examinations reflected moderate findings that were consistent with Plaintiff's assessed RFC and not consistent with Drs. Leung and Kim's severe restrictions. AR 22, 24-25 (citing, *inter alia*, AR, 396, 399, 409, 552-53, 574, 588-89). The medical evidence reveals Plaintiff repeatedly advised medical professionals that he had "no complaints" during visits. See, e.g. AR 396 (notes from December 19, 2014 visit, stating Plaintiff has "[n]o complaints. Would like refills on meds."); AR 405 (notes from September 15, 2014 visit, stating Plaintiff "[f]eels well with no complaints").

Additionally, the ALJ also properly discounted the opinions of Dr. Leung and Dr. Kim as inconsistent Plaintiff's routine and conservative treatment. AR 24-25. The ALJ noted: (a) in October 2014, Plaintiff reported he

9

had not undergone any treatment such as diagnostic studies, physical therapy, injections, or surgeries since his previous evaluation over a year earlier (AR 22 [citing AR 588-89]); and (b) a November 2014 report in which Plaintiff reported that his right shoulder pain was alleviated with his father's Lidoderm patches, declining further medication (AR 25 [citing AR 399]). Although Plaintiff notes his prior surgeries as evidence of non-conservative treatment, as the Commissioner notes, and as Plaintiff's citation to the record demonstrate, those surgeries took place eleven months or more before the alleged onset date and prior to the opinions rendered by Drs. Kim and Leung. Jt. Stip. at 6, 10.

In addition, the ALJ, "[i]n making findings in this case," considered the opinion of the State agency medical consultant and accorded that assessment, which was consistent with the RFC assessed, "great weight." AR 25. An ALJ may consider findings by state-agency medical consultants as opinion evidence. 20 C.F.R. § 404.1527(e). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ properly relied upon the State agency medical consultant's opinion in according little weight to Drs. Leung and Kim.

Here, the ALJ provided a detailed review of the medical evidence, including the opinions of the State agency reviewing physician as well as examining and treating physicians, among other things, in formulating Plaintiff's RFC. AR 20-26. The RFC determination is an "administrative finding" specifically reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2) Dominguez v. Colvin, 808 F.3d 403, 409 (9th Cir. 2015); Lynch Guzman v. Astrue, 365 F. App'x 869, 870 (9th Cir. 2010); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine

[RFC]."). The ALJ set forth specific and legitimate reasons supported by substantial evidence for discounting significant and probative medical opinions that were more restrictive than the RFC. The ALJ did not err in his consideration of the medical evidence in assessing Plaintiff's RFC.

### B. Subject Symptom Testimony

With respect to Issue No. 2, Plaintiff argues the ALJ "failed to properly consider Plaintiff's subjective statements of record and testimony regarding his symptoms, and resulting limitations." Jt. Stip. at 13.

#### 1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ may consider, among other factors: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds, 807 F.3d at 1006. A "lack of medical evidence cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not "required to believe every allegation" of disability" (Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) and if the ALJ's assessment of the

11

testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins, 261 F.3d at 857. Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson, 359 F.3d at 1197.

2. Analysis

During the 2017 hearing, Plaintiff described living alone in a two-story house. AR 51. He wore braces on both wrists and testified he "can no longer use" his hands. AR 54. He described "severe swelling" in his right knee, for which he wears a brace, which "makes it feel better." AR 55. He also expected to receive a back brace because he has "severe arthritis in [his] lower back." Id. Plaintiff described driving three times per week to the store, to his parents' house, to the gas station, to church, to doctors' appointments, to a friend's house, and to his girlfriend's house, but he can only drive "for, like, ten minutes as far as distance or [his] hands would fall asleep." AR 55-56, 60. Plaintiff does his own laundry, cooks "quick dinners" like "microwave food" when he is hungry, but does not sweep or mop floors. AR 56-57. He suffers from priapism, which results in a "very painful erection" every day that lasts "for over five hours" and prevents him from wearing clothes. AR 58. Plaintiff has a swimming pool and swims "almost everyday for therapy." AR 60. Plaintiff also cites to written submissions he has made during the "lengthy claims process" describing arthritis, shoulder and wrist impairments, an inability to shave, difficulty putting on shoes, numbness and/or pain in his back and legs. Jt. Stip. at 13 (citing AR 233, 247, 283, 294, 303). Plaintiff reported or confirmed to his doctor on October 30, 30214, November 6, 2014 and again on December 9, 2014, that he exercises or does moderate physical activity five days per week and often has more than two alcoholic beverages per day. AR 397, 399-400, 402.

12

The ALJ analyzed Plaintiff's subjective symptoms and the medical and opinion evidence regarding those symptoms in detail in his decision, concluding that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . .." AR 21.

Among other bases, the ALJ found the "medical evidence of record does not support the severity of [Plaintiff's] allegations," citing, among other things, records reflecting Plaintiff's refusal to take medication and having "no complaints," as well as diagnostic testing and exams that revealed only moderate findings. AR 22. Although Plaintiff states in conclusory fashion that the medical evidence reflects impairments that preclude work (Jt. Stip. at 15), Plaintiff, unlike the ALJ, does not cite to evidence in the record other than generic references to opinions of Drs. Leong and Matiko, opinion the Court has already found were properly discounted by the ALJ. The ALJ properly discounted Plaintiff's subjective symptom testimony partly on its inconsistency with the medical evidence of record; however, as noted, that reason cannot be the sole basis for the ALJ's decision.

As a second basis the ALJ cited is the "routine and conservative treatment" Plaintiff had undergone since the alleged onset date, citing, among other things: (i) an October 12, 2014 report by Dr. Kim noting Plaintiff had not "undergone any treatment in the form of diagnostic studies, physical therapy, injections, or surgeries" since prior to August 13, 2013, the alleged onset date; and (ii) November 6, 2014 treatment notes indicating Plaintiff "did not want to take any meds." AR 22 (citing AR 399, 588-89). Conservative treatment is a legitimate consideration in evaluating subjective symptoms. See Parra, 481 F.3d at 750-51 ("evidence of conservative treatment is sufficient to discount a

claimant's testimony regarding severity of an impairment"). As the Commissioner notes, Plaintiff did not, in his portion of the Joint Stipulation, address this basis proffered by the ALJ, and did further did not address it despite an opportunity to reply (see Dkt. 7, ¶ 5(c)) after the Commissioner noted the basis was not addressed. The ALJ's finding regarding conservative treatment was a clear and convincing reason to discount Plaintiff's statements of a disabling condition. See Tommasetti, 533 F.3d at 1040; Fair, 885 F.2d at 604 (finding a claimant's allegations of persistent, severe pain and discomfort were belied by conservative treatment); see also Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (credibility determination supported in part by evidence of conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise).

Third, the ALJ noted instances indicating treatment was generally working, citing November 6, 2014 treatment notes indicating Plaintiff was using his father's Lidoderm patches to alleviate pain and declined further medication and December 9, 2014 treatment notes reflecting Plaintiff had "no complaints" but sought refills on medication. AR 22 (citing AR 396, 399); see also AR 405 (notes from September 15, 2014 medical visit, stating Plaintiff "[f]eels well with no complaints"). As with conservative treatment, Plaintiff does not address the ALJ's statements and supporting evidence on this issue. "Impairments that can be controlled effectively with medication are not disabling." Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ properly discounted Plaintiff's testimony on this basis. See Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled by medication).

Fourth, the ALJ cited Plaintiff's "somewhat normal level of activities," including living alone in a two-story house, driving on a regular basis to the

store, his parents' house, the gas station, church, doctors' appointments, and his girlfriend's house, performing household chores, making simple meals, and swimming every day in his own pool, some of which "are the same as those necessary for obtaining and maintaining employment." AR at 19-20. Plaintiff argues that these activities are "not inconsistent" with Plaintiff's symptom descriptions. Jt. Stip. at 15.

Although an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" (Molina, 674 F.3d at 1112), the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a vehicle, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016.

Here, the ALJ properly discounted Plaintiff's testimony that he "can no longer use" his hands, which prevents him from working (AR 54, 57-58), by noting that Plaintiff lives alone in a house, makes simple meals, goes shopping, pumps gas, goes swimming in his own pool every day, regularly drives a car to visit doctors, his parents, a friend, and a girlfriend, among other activities. The ALJ properly noted that many of those activities are consistent with work and are inconsistent with a claim of disability. The ALJ properly discounted Plaintiff's subjective symptom testimony about disabling pain based upon his

15

activities of daily living. See, e.g. <u>Molly C. v. Comm'r of Soc. Sec.</u>, 2018 WL 6517557, at *4 (W.D. Wash. Oct. 31, 2018) (finding an ALJ properly discounted symptom testimony based on Plaintiff's inconsistent activities of socializing with family and friends, playing cards and board games, swimming, driving herself to medical appointments, and travelling); <u>Goodwin v. Colvin</u>, 2014 WL 2472205, at *12 (C.D. Cal. June 3, 2014) (finding an ALJ properly discounted symptom testimony based on Plaintiff's inconsistent activities of swimming three times per week, peddling a bicycle at home, living alone, and driving to the grocery store and doctors' appointments).

For the foregoing reasons, the ALJ provided multiple sufficiently specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

## V.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security.

Dated: July 05, 2019

_____
JOHN D. EARLY
United States Magistrate Judge